UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIM NO. 19-CR-212 (TFH) |
| | ) | |
| v. | ) | |
| | ) | |
| JOHNNY LAINEZ | ) | SENTENCING: October 11, 2019 |

**GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING**

The United States, by and through its attorney, the United States Attorney for the District of Columbia, hereby submits the following memorandum to assist the Court in issuing an appropriate sentence in this case. For the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of incarceration of 235 months to be followed by lifetime supervised release, with the conditions recommended by United States Office of Probation, including that the defendant undergo intensive sex offender and substance abuse treatment, the defendant's computer and internet usage be monitored, and the defendant's direct contact with minors be limited and supervised. The defendant is required by statute to register as a sex offender for life.

**I.    BACKGROUND**

  **A.    Factual Summary**

On January 17, 2019, an adult female ("reporting person") contacted the Metropolitan Police of the District of Columbia (MPDC) to report that her daughter, a ten-year-old female, had been contacted by text message by an unknown male, later identified by the Federal Bureau of Investigation (FBI) as the defendant, Johnny Cory Lainez. The reporting person was put in contact with a detective assigned to the Federal Bureau of Investigation (FBI) / MPDC Child Exploitation and Human Trafficking Task Force (CEHTTF) who investigated the matter.

1

The reporting person advised the detective that the defendant, whose identity was unknown to her, had been in contact with her daughter from a telephone number of (202) 580-3342 and asked the child in these messages to send "pics" of herself. The reporting person observed these messages on her child's phone, called the defendant's phone number, and advised him not to contact the number and that her daughter was a 10-year-old child. He agreed to cease contact. The reporting person subsequently reported the conduct to the FBI / MPDC CEHTTF.

The telephone number of (202) 580-3342 was owned by Sprint and registered to the defendant, Johnny Cory Lainez, with a date of birth of August 7, 1971. The CEHTTF conducted a records check of Johnny Cory Lainez and determined that he is registered as a "Complaint Tier III Sex Offender" in Montgomery County, Maryland as a result of a conviction for "Carnal Knowledge of a child (13 to 15 years of age)" on December 20, 2012 in Arlington County, Virginia. On his sex offender registration, the defendant reported that he resided at 5607 Johnson Ave in Bethesda, Maryland, and worked at 12400 Kiln Court in Beltsville, Maryland. The defendant also reported that he is the operator of a black Hyundai with Maryland registration of "2BV0118."

On January 24, 2019, an undercover employee (UC) assigned to the FBI / MPDC CEHTTF initiated contact with the defendant via text message at the defendant's known telephone number of (202) 580-3442. The UC posed as a twelve-year-old female, and identified himself as such during the initial contact with the defendant by stating via text message that he was "turning 13." The defendant acknowledged this information, and continued to exchange text messages the UC.

During the course of the messaging exchange, the defendant advised the UC that he resided in Bethesda, Maryland. The UC, posing as the child, told the defendant that his parents

were divorced and that he lived between Virginia and Washington, D.C. with his two parents, and attended school in Virginia. The UC informed the defendant his name was "Emma" and the defendant identified himself as "Johnny."

During the course of the online conversation, the defendant eventually asked the purported child to send photographs of her face, breasts, and body. The defendant specifically stated, "When you get home text me a naked pic of you so I know you are not a cop." The UC complied by sending the defendant images depicting the purported child's face, abdomen, chest and underwear.1 The defendant commented on how beautiful the purported child's body was and continued to ask for additional pictures. The defendant stated, "Your boobs are amazing from what I saw I love pink nipples." The defendant also sent the UC an image of himself, depicting himself clothed and from the waist up. The image appeared to match that of the individual pictured in the defendant's sex offender registration.

The defendant repeatedly acknowledged statements by the UC in which the UC, posing as the child, stated she was a minor, and twelve years old. The defendant asked the purported child at times if she was out of school yet, acknowledged that the purported child had to be careful so her mother did not catch her, and made the following statements:

> UC: You told me to put the note on my boobs, I'm flat chested and embarrassed.
>
> Defendant: Baby your boobs are money trust me [you] should be proud of them for realz!2 But I did not get that pic?

The defendant asked the purported child to meet him in Washington, D.C., and arranged to meet her at the end of January 2019. The defendant proposed that he would pay eighty dollars

---

1 The images did not depict a real child.
2 All typographical errors and abbreviated language in quoted text messaging language are original.

to engage in sex acts after the UC, posing as the child, disclosed that, on a previous occasion, a boy her age had given her eighty dollars to engage in oral sex with a him. The UC, pretending to be the child, and the defendant engaged in the following conversation:

> Defendant: Baby you will get more from me and in the long run you will even more out of me
>
> UC: How much are you going to give me tomorrow and what's do u want me to do.
>
> UC: I wanna to know what I have to do to get more money than what I got from him.
>
> Defendant: 80 and same as the boy with the intimacy.
>
> UC: Ok how long does it take you to finish and just have to suck your dick for 80 right?
>
> Defendant: Not sure but not long tho.
>
> UC: Ok and just suck right?
>
> Defendant: Ever had your pussy eaten?
>
> UC: Yes once I liked it but this boy only wanted to finger me and have me suck him.
>
> Defendant: I can make you cum really hard by sucking on your pussy.

Later that day, the defendant texted the purported child and pretended that a friend had taken his phone. The defendant stated, "I don't know who you are but a friend of mine had my phone for a few days and I believe he has been playing a head game with you. My name is Johnny and I suspect that while my friend had my phone he was in communication with you and even sent a picture of myself to you."

The defendant continued to apologize to the purported child and told her he would still give her eighty dollars because his friend felt bad for playing games with her. The UC ended the messaging exchange with the defendant at that time. The UC, still acting as the child, advised the defendant that he could keep the money, and reported that she was no longer interested with

him.

On Saturday, March 9, 2019, the defendant again contacted the purported child on the UC's number. The defendant again attempted to arrange to meet the purported child to engage in sex acts. The UC, pretending to be the child, again reminded the defendant that she was a twelve-year-old female. The defendant then engaged in the following conversation with the UC via text message to arrange the meeting:

Defendant: When can we meet ? Any chance we can meet today after 7?

UC: Ok maybe what u want for that

Defendant: Talk first get comfortable then see same as the other boys.

UC: All I do for them is blowjobs for 80.

Defendant: That can work , you enjoy having your pussy eaten?

UCE: Yeah, I actually do

Defendant: I can eat you pussy

The defendant agreed to meet the purported child near the Verizon Center at 7:30 pm on March 11, 2019. The defendant asked the purported child to wear a skirt for the meeting, and asked if they could go to the child's residence near the Verizon Center. After the UC, acting as the child, told the defendant that her father would not be home until 1:00 am, the defendant stated, "What are you going to be wearing so I know to look for at the Verizon metro entrance. Plenty of time for me to eat your pussy."

Members of the FBI / MPDC CEHTTF were stationed in the area of the Verizon Center near the planned meeting point from approximately 7:00 pm to conduct surveillance in the area for the defendant's vehicle. The defendant was in communication with the purported child while the members were in the area, and texted the purported child that he had made it to the area. The

5

defendant stated that he was at the intersection of 7th and F Street Northwest.

Members of the CEHTTF observed the defendant at the northeast corner of 7th and F Street, Northwest in a black Hyundai sedan bearing Maryland Registration of "2BV0118." A traffic stop was conducted at the location by the members of the CEHTTF, and the defendant was taken into custody without incident.

The defendant was identified on scene as Johnny Cory Lainez, with a date of birth of August 7, 1971 and a residential address of 5607 Johnson Avenue, Bethesda, Maryland. The defendant matched the image sent to the UC in the course of the chats and depicted on the defendant's sex offender registration. The defendant was in possession of a cellular phone in the vehicle, which was seized incident to arrest. The defendant was arrested transported to the FBI Washington Field Office (WFO) where he was advised of his Miranda Rights. The defendant waived his rights, and an audio and video recorded interview was conducted.

During the course of his interview, the defendant confirmed that his telephone number is (202) 580-3342, and that he had been in communication with what he thought was a twelve-year-old female child via text message. The defendant reported that he had always been the person speaking to the UC, even during the communications in which he had previously pretended that someone else had used his phone. The defendant advised that he had agreed via text message to travel from his home in Montgomery County, Maryland to engage in sexual acts with a twelve-year-old female for eighty dollars in US Currency. The defendant then stated, however, that he just wanted to "talk" if a child did approach his vehicle and would not have gone through with the sexual acts.

## II. SENTENCING CALCULATION

### A. Statutory Penalties

Sex Trafficking of a Minor who is under fourteen years of age carries a mandatory minimum sentence of fifteen years and maximum sentence of lifetime imprisonment pursuant to 18 U.S.C. §§ 1591(b)(1), a fine of not more than $250,000 pursuant to 18 U.S.C. § 3571(b)(3), an order of restitution, and an obligation to pay any applicable interest or penalties on fines or restitution not timely made, and a period of supervised release – after any period of incarceration – of not less than five years or life pursuant to 18 U.S.C. § 3583(k).

### B. Sentencing Guideline Range

The United States agrees with the PSR writer regarding the calculation of the defendant's guideline range contained in the PSR. The government agrees that the base offense level under the United States Sentencing Guidelines ("U.S.S.G.") for Sex Trafficking of a Minor is 34, pursuant to U.S.S.G. § 2G1.3(a)(1). See PSR ¶ 30. The government agrees with the PSR that the following Specific Offense Characteristic applies: the offense involved the "use of a computer" (+2). See PSR ¶ 31. Accordingly, the defendant's adjusted offense level is 36. See PSR ¶ 35. The government agrees with the PSR writer that, pursuant U.S.S.G. § 4B1.5(a), defendant is a Repeat and Dangerous Offender Against Minors, and the resulting offense level under U.S.S.G. § 4B1.5(a)(1)(B)(i) is 37. See PSR ¶ 36.

The United States also agrees with the PSR writer that the defendant is entitled to a three-level reduction for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1 and U.S.S.G. § 3E1.1(b). See PSR ¶¶ 37-38.

Regarding the defendant's criminal history, the government agrees with the PSR writer that the defendant has a criminal history score of 9, which would make him a criminal history category IV but for the fact that he is a Repeat and Dangerous Sex Offender Against Minors

pursuant to U.S.S.G. § 4B1.5(a), which places him in criminal history category V.  See PSR ¶¶ 71-72.  With an offense level of 34 and a Criminal History Category V, the defendant's guideline sentencing range is 235 to 293 months incarceration.

### III.     GOVERNMENT'S RECOMMENDATION

#### A.     Application of the Federal Sentencing Guidelines

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court held that the mandatory application of the United States Sentencing Guidelines violates the Sixth Amendment principles articulated in Blakely v. Washington, 124 S. Ct. 2531 (2004).  As a consequence, the Court invalidated the statutory provision that made the Guidelines mandatory, 18 U.S.C. § 3553(b)(1).  Booker, 125 S. Ct. at 756.

In post-Booker cases, the Supreme Court has stated that a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range.  See United States v. Gall, 552 U.S. 38, 49 (2007) ("As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark.")  After giving both parties an opportunity to argue for an appropriate sentence, the district court should then consider all of the applicable factors set forth in 18 U.S.C. § 3553(a).  Id.  These factors include "the nature and circumstances of the offense and the history and characteristics of the defendant" (18 U.S.C. § 3553(a)(1)); the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment (18 U.S.C. § 3553(a)(2)); the kinds of sentences available (18 U.S.C. § 3553(a)(3)); the Sentencing Guidelines and related Sentencing Commission policy statements (18 U.S.C. § 3553(a)(4) and (a)(5)); the need to avoid unwarranted sentencing disparities (18 U.S.C. § 3553(a)(6)); and the need to provide restitution to any victims of the

offense (18 U.S.C. § 3553(a)(7)).

### B. Basis for the Government's Recommendation

The government submits that a sentence of 235 months incarceration to be followed by a lifetime period supervised release, with the specific conditions of supervision recommended by the United States Office of Probation, is appropriate and warranted in this case based on the factors in 18 U.S.C. § 3553(a). The recommended sentence is sufficient, but not greater than necessary, to accomplish the purposes of sentencing.

#### 1. Nature and Circumstances of the Offense

The nature and circumstances of the offense charged are egregious. The defendant first met a ten-year-old child online and persisted in asking her to send "pics" of herself. Fortunately, his conduct – not new to him – was uncovered by the child's mother and law enforcement was alerted. This turn of events led to an undercover officer catching the defendant red-handed, yet again using the internet to seek out a young child to exploit. Defendant went online to meet what he believed was a real 12-year-old female child and pursued meeting her to engage in a sexual relationship for which he was willing to pay. He not only engaged in sexually explicit chat communications in which he arranged to have a sexual encounter with the child, but he actually got into his car and drove into the District of Columbia to carry out his plan. Given that he had previously engaged in a sexual relationship with a very young girl he had met online, there is no reason to doubt that the defendant would have carried out the plans he made with the purported 12-year-old girl had she been an actual child rather than an undercover agent. It was purely fortuitous that this time, the child defendant preyed upon was a law enforcement agent rather than a real child. Defendant, of course, did not know as much, or otherwise would not have bothered to make the trip to D.C. The fact that, undoubtedly to his surprise, it was the FBI rather

than a 12-year-old girl waiting his arrival should not inure to his credit and does not make the offense any less serious. Rather, in light of his prior conviction, the fact that he would have gone through with a plan to have sex with a child is evident; the FBI simply served to catch him in the act.

### 2. History and Characteristics of the Defendant

The defendant's criminal history, personal characteristics, and adjustments both while incarcerated and when he has been under supervision in the community weigh heavily in favor a lengthy term of incarceration in this case. Weighing most obviously in favor of a significant prison sentence is the fact that this conviction represents his second offense as an adult in which he met a young teenaged person online and committed a sex crime. Indeed, defendant was already required to register as a sex offender as a result of his last conviction – a conviction resulting from his actual sexual assault of a child in Virginia – when he committed the instant offense. It is obvious from his lengthy statement regarding that offense, as quoted in the PSR (see ¶ 66), that defendant never accepted responsibility for his crime against that child, nor did he appear to learn much from the lengthy prison term that he served as a result of committing it. Indeed it was less than a decade after his release in that case that defendant was right back at it, locating a child online and engaging in exploitative behavior toward her. This return to such conduct – only here escalated by his willingness to pay for sexual access to a child – demonstrates that even a lengthy term of imprisonment proved no deterrent at all to the defendant. As such, the defendant clearly poses a danger to children in the community.

In addition to his clear sexual interest in children, the danger the defendant poses is illustrated by his blatant disregard for the law and the rules by which he is required to abide. The defendant has a lengthy criminal arrest record and a number of prior convictions. While

individually, many of these appear to be for less serious traffic and other more minor violations of the law, collectively they are quite troubling. The defendant's first encounter with the law was at only 14 years old. From that time until he committed the offense of conviction in this case, defendant has a sting of arrests that were, until he was convicted of his prior sex offense, accompanied by minor punishments that did nothing to curb his failure to abide by the law. Where the PSR writer was able to find records regarding defendant's compliance with supervision and conditions, the records reflect that there, too, he consistently failed to comply with what was required. This does not bode well for defendant's ability to succeed in the community if not incarcerated, and recommends in favor of a lengthy term of supervision and intensive monitoring conditions.

In addition, it is evident that the defendant has a severe alcohol abuse problem. Many of his prior conviction reflect as much and he has tentatively admitted that it is problematic for him. Defendant's persistent alcohol abuse clearly must be treated in order for him to have any potential success upon release from any period of incarceration imposed by this court. The defendant's history of substance abuse, consistent failure to abide by the law, and seemingly very few ties to the community are concerning for his ability to succeed absent extensive supervision, and recommend a lengthy period of supervised release following any period of incarceration.

### 3. Punishment, Deterrence, Protection, and Correction

A sentencing court "shall impose a sentence sufficient, but not greater than necessary" to comply with the need for a sentence: "(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (d) to provide the defendant with needed educational or vocational training, medical care, or

11

other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2).

The government's recommended sentence is sufficient, but not greater than necessary, to provide just punishment for the defendant's offenses.

### 4. Available Sentences

The defendant should be sentenced to a term of incarceration. Probation is expressly precluded by statute. Further, the defendant is in Zone D of the Guidelines, and thus a probationary sentence would be a departure from the Guidelines. See PSR ¶ 135. According to the PSR, the defendant does not have the ability to pay a fine in this case. See PSR ¶ 119.

In addition, the Court should impose a term of supervised release, and the government recommends that it be for life. A lengthy term of supervised release is critical because it will subject the defendant to ongoing monitoring and sex offender and substance abuse treatment. The conditions of supervised release should include the following conditions, which are conditions imposed in similar cases and conditions that are recommended by the United States Probation Department:

(1) The defendant must register as a sex offender and submit to searches of his person, property, house, residence, vehicle, papers, computers, other electronic communications or data storage devices or media, and effects, at any time, with or without a warrant, by law enforcement or probation officer with reasonable suspicion concerning unlawful conduct or a violation of a condition of supervision.

(2) The defendant must undergo and comply with sex offender evaluation and treatment. This may include the use of polygraph testing as part of the therapeutic process.

(3) The defendant's use of the Internet, computers, and any other Internet-capable devices will be restricted and monitored.

(4) The defendant will not have direct contact with minors without the written approval of probation. This also entails both an employment/volunteer restriction and residential restriction, in that the defendant shall not be employed in any capacity, or participate in any volunteer activity, which may cause him to come in direct and/or unsupervised contact with children for more than momentary duration without advanced approval by the United States Probation Office, and the defendant shall have all residences pre-approved by the United States Probation Office. Specifically, the defendant shall not live in a residence where minor children also reside without the permission of the United States Probation Office.

As it relates to the above conditions, first, the defendant will be required by statute to register as a sex offender as a result of his convictions in this case. Second, the defendant initially met the victim online – his second conviction for such conduct – and, therefore, the defendant's use of the Internet to initiate contact with the victim in this case and his prior case justifies monitoring his future use. Third, the defendant's knowing sexual abuse of a child in the past and attempt to do so again in this case justifies monitoring his direct contact with any minors and support the imposition of sex offender evaluation and treatment.

### 5. Restitution

There are no requests for restitution from the victims at the current time.

## IV. **CONCLUSION**

WHEREFORE, for all of the reasons set forth herein, the government recommends that the Court sentence the defendant to a term of imprisonment of 235 months imprisonment to be followed by a period of lifetime supervised release, with the specific conditions of supervision recommended by the United States, with the recommended conditions of supervision. The

defendant is further required by statute to register as a sex offender for life.

                                          Respectfully submitted,

                                          JESSIE K. LIU
                                          UNITED STATES ATTORNEY

                                          ____/s/_____
                                          Andrea Hertzfeld
                                          Assistant United States Attorney
                                          D.C. Bar No. 494059
                                          555 Fourth Street, N.W.
                                          Washington, D.C. 20001
                                          (202) 252-7808